UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO MAJORITY CLUB; LIBERTARIAN PARTY OF IDAHO; and TRAVIS CLYDE,<br><br>Plaintiffs,<br><br>v.<br><br>PHIL McGRANE, in his official capacity as Secretary of State of the State of Idaho; and RAUL LABRADOR, in his official capacity as Attorney General of the State of Idaho,<br><br>Defendants. | Case No. 1:26-cv-00449-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Plaintiffs' Motion for Preliminary Injunction (Dkt. 4). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal argument are adequately presented and that oral argument would not significantly aid its decision-making process, and it decides the motion on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court grants in part and denies in part the motion.

## I. BACKGROUND

This case concerns political spending coordinated between a political party and a candidate. On June 30, 2026, the Supreme Court decided *Nat'l Republican Senatorial Comm. v. Fed. Election Comm'n*, 146 S. Ct. 2404 (2026) (*NRSC*). There, the Court held that the Federal Election Campaign Act's limits on political parties' coordinated expenditures violate the First Amendment. *Id.* at 2413, 2427. In *NRSC*, the United States agreed that the limits were unconstitutional, but the

intervenors and a court-appointed amicus defended the contrary judgment below. *Id.* at 2414. In reaching its decision, the Supreme Court addressed another case, *Federal Election Comm'n v. Colorado Republican Federal Campaign Comm.*, 533 U.S. 431 (2001) (*Colorado II*), and explicitly held that, "[t]o the extent that *Colorado II* has retained any vitality, it is now overruled." *NRSC*, 146 S. Ct. at 2426. Less than three weeks later, Plaintiffs filed this action challenging Idaho's treatment of coordinated political-party expenditures under Idaho Code § 67-6610A (Dkt. 1).

Days later, on July 23, 2026, Plaintiffs filed their Amended Complaint (Dkt. 3). It identifies three Plaintiffs: the Idaho Majority Club (IMC), the Libertarian Party of Idaho (LPI), and Travis Clyde. The Amended Complaint specifically, and only, challenges Idaho Code § 67-6610A(2). It alleges that LPI is the official Libertarian Party organization in Idaho and that it "wishes to coordinate without limitation campaign expenditures with its party candidates" (Dkt. 3 at 3 ¶ 8). It also alleges IMC and Clyde wish to contribute funds to official party organizations so those organizations may coordinate expenditures with their candidates without limitation (*id.* ¶¶ 9-10).

Plaintiffs moved for a preliminary injunction the same day (Dkt. 4). The motion seeks to prohibit enforcement of § 67-6610A(2) through the November election or until a final ruling on the merits (*id*. at 2, 11). Plaintiffs seek expedited relief because the law is affecting them now; fundraising and campaign budgeting must precede the design, printing, purchase, and dissemination of political communications before absentee voting and the November 3 election (*id*. at 6-7).

### A. Idaho's Statutory Scheme

Idaho Code § 67-6610A limits aggregate contributions to candidates. Subsection (2) governs contributions by county central committees and state central committees of political

parties qualified under Idaho Code § 34-501. A county or state central committee may contribute no more than $2,000 per primary election and $2,000 per general election to a candidate for the state legislature. Idaho Code § 67-6610A(2). A state central committee may contribute no more than $10,000 per primary election and $10,000 per general election to a candidate for statewide office. *Id*. A "statewide office" is an office appearing on the primary or general election ballot throughout the state. I.C. § 67-6610A(3).

The statute also addresses nonmonetary or "in kind" contributions. Subsection (5) provides that contributions other than money or its equivalent have a monetary value equal to their fair market value; services, property, or rights furnished for the purpose of assisting a candidate may constitute an in-kind contribution; and such a contribution counts toward the contributor's applicable contribution limit. I.C. § 67-6610A(5). Section 67-6610A(7) declares the provisions of § 67-6610A severable.

Idaho does not separately address a limit on "coordinated expenditures." Rather, Defendants explain that when a political party makes an expenditure in coordination with a candidate, Idaho treats the expenditure as an in-kind contribution and applies the otherwise applicable contribution limit (Dkt. 9 at 4). The Secretary of State's Campaign Finance Disclosure Manual confirms the same (Dkt. 10-4 at 20-22). Independent expenditures—made without cooperation or prior consent of the candidate—are treated differently and are not at issue here (Dkt. 9 at 4).

The Amended Complaint's theory is narrow: to the extent Idaho counts a political party's own campaign spending, undertaken in coordination with its candidate, against § 67-6610A(2)'s contribution ceiling, Plaintiffs contend Idaho imposes the same kind of restriction on party-coordinated expenditures that *NRSC* held unconstitutional (Dkt. 4 at 2-6).

**B. The Briefing and Reply Evidence**

Defendants oppose the motion principally on standing. The parties agree that § 67-6610A(2) applies to LPI, but Defendants contend LPI has not shown a sufficiently concrete intent to engage in coordinated expenditures exceeding subsection (2)'s limits (Dkt. 9 at 2, 8-11). Defendants also rely on LPI's historically modest campaign spending as evidence that any threatened injury is not imminent (*id.* at 9-10; Dkt. 9-1 at 2-3). As to the constitutional merits, however, Defendants do not develop an argument distinguishing Idaho's application of § 67-6610A(2) to coordinated party expenditures from the federal coordinated expenditure restrictions invalidated in *NRSC* (Dkt. 9 at 1, 4). Their opposition instead asks the Court to deny preliminary relief because Plaintiffs lack standing and because state officials need additional time to evaluate *NRSC*'s effect on Idaho law (*id.* at 2, 11-12).

Plaintiffs filed their reply on August 14 (Dkt. 10). In response to Defendants' standing challenge, Plaintiffs submitted additional evidence concerning LPI's current coordinated campaign activity. LPI Chair Matt Loesby declares that LPI's board authorized a $1,000 expenditure for Facebook advertising coordinated with Sue Ann Meyers, LPI's candidate for Nez Perce County Clerk, and authorized an additional $1,500 in coordinated advertising for Meyers "and/or our other candidates" if the challenged restrictions are lifted (Dkt. 10-1 at 2 ¶¶ 4-6). Meyers confirms the coordinated expenditure (Dkt. 10-2 at 2 ¶¶ 2-5; *see also* Dkt. 10-5 at 2). As discussed below, this evidence bears on LPI's asserted intent to engage in coordinated party spending, although the Meyers' expenditure itself concerns a county candidate and implicates subsection (1), not subsection (2).

On that note, the reply requests, for the first time, preliminary relief under § 67-6610A(1) (Dkt. 10 at 2 n.1). The Court declines to consider that expanded request on the present briefing.

The Amended Complaint repeatedly challenges subsection (2), and Plaintiffs' motion expressly seeks an injunction against subsection (2). Defendants structured their opposition around that provision and have not had an opportunity to address the distinct statutory provision, the application of *NRSC* to it, or the appropriate scope of any corresponding relief. Accordingly, the Court considers the reply evidence to the extent it bears on the issues properly before the Court, but it does not consider Plaintiffs' newly asserted request for relief under subsection (1). That request is denied without prejudice, and the Court expresses no view on its merits.

## II. LEGAL STANDARD

### A. Standing

Article III requires a plaintiff to show an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and likely redressable by a favorable ruling. *Murthy v. Missouri*, 603 U.S. 43, 57 (2024). At the preliminary-injunction stage, a plaintiff must make a "clear showing" that it is likely to establish each element of standing. *Id.* at 58; *Arizona Alliance for Retired Americans v. Mayes*, No. 22-16490, 2026 WL 2277101, at *4 (9th Cir. Aug. 7, 2026) (en banc).

A pre-enforcement injury is a "special subset" of injury in fact because the injury is anticipated future enforcement. *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024). A plaintiff asserting pre-enforcement standing must show that: (1) it intends to engage in conduct arguably affected with a constitutional interest; (2) the intended conduct is arguably proscribed by the challenged statute; and (3) the threat of future enforcement is substantial. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161-64 (2014); *Jackson-Edney v. Labrador*, No. 1:26-CV-000261-AKB, 2026 WL 1732955, at *1 (D. Idaho June 16, 2026). A plaintiff need not violate the law, or

even literally plan to break it, before bringing a First Amendment pre-enforcement challenge. *Peace Ranch*, 93 F.4th at 488–89.

### B. Preliminary Injunction

Under Rule 65 of the Federal Rules of Civil Procedure, a party may obtain injunctive relief before a final judgment in certain limited circumstances. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008). "Ordinarily, [preliminary] injunctions . . . may go no further than necessary to provide interim relief to the parties," and any equitable remedy must not be "more burdensome to the defendant than necessary to [redress] the plaintiff's injuries." *Labrador v. Poe by & through Poe*, 144 S. Ct. 921 (2024) (Gorsuch, J., concurring).

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits; he is likely to suffer irreparable harm in the absence of preliminary relief; the balance of equities tips in his favor; and an injunction is in the public interest. *Winter*, 555 U.S. at 20. The movant must carry this burden "by a clear showing." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). Courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. *Winter*, 555 U.S. at 24. When the government is a party, the factors regarding public interest and equities merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Courts in the Ninth Circuit apply a "sliding scale" standard, "allowing a stronger showing of one element to offset a weaker showing of another." *Doe v. Snyder*, 28 F.4th 103, 111 (9th Cir. 2022) (citing *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). Under this approach, an injunction is proper where "serious questions going to the merits" and a hardship balance "tips sharply toward the plaintiff."

*Alliance for the Wild Rockies*, 632 F.3d at 1132; *see also N. D. v. Reykdal*, 102 F.4th 982, 992 (9th Cir. 2024) (noting the merits factor is "the most important" in court's analysis).

## III. ANALYSIS

### A. LPI Has Standing to Challenge § 67-6610A(2)

LPI intends to engage in conduct arguably affected with a constitutional interest, its planned conduct is "arguably proscribed"; and the threat of future enforcement remains substantial. That injury is sufficient for standing. Because the injury is readily traceable to Defendants and redressable by this Court' s order, LPI has standing, and this case may proceed.

First Amendment pre-enforcement challenges raise "unique standing considerations," which "tilt dramatically toward a finding of standing." *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010) (quoting *Arizona Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003), and *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000)). "[A] chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury." *Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013). The Ninth Circuit recently reaffirmed those principles, describing pre-enforcement standing in the First Amendment context as a "low threshold." *Arizona Alliance for Retired Americans*, 2026 WL 2277101, at *3, *9 (en banc).[1] Accordingly, a First Amendment plaintiff may establish standing even absent "actual, impending enforcement" against it. *LSO, Ltd.*, 205 F.3d at 1155. Instead, the inquiry considers what the plaintiff intends to do but for the challenged restriction. *Peace Ranch*, 93 F.4th at 488.

---

1 Defendants rely on the traditional *Thomas* factors, including whether a plaintiff has articulated a "concrete plan to violate the law" (Dkt. 9 at 3, 9). *Arizona Alliance*, however, clarified that the governing framework for First Amendment pre-enforcement standing is the Supreme Court's three-part test articulated in *Driehaus*, rather than treating a "concrete plan to violate the law" as an independent prerequisite to standing. *Arizona Alliance,* 2026 WL 2277101, at *9–12.

LPI satisfies this comparatively permissive First Amendment standard. The Amended Complaint alleges that LPI "wishes to coordinate without limitation campaign expenditures with its party candidates" (Dkt. 3 at 3 ¶ 8). Plaintiffs' preliminary-injunction motion places that intended activity in the November election and asserts that subsection (2) presently restricts it (Dkt. 4 at 2, 6–7). The Secretary of State's Campaign Finance Disclosure Manual reflects LPI's understanding of the existing limits (Dkt. 10-4 at 20–22). Defendants, in turn, concede Idaho Code § 67-6610A(2) applies directly to LPI (Dkt. 9 at 2). It is the regulated political-party organization whose expenditures made in coordination with legislative and statewide candidates are treated by Idaho as in-kind contributions and subjected to subsection (2)'s contribution limits (*id*. at 4). LPI has both a legislative candidate and a statewide candidate in the upcoming election: Paul Sand for Governor and Joseph Bishop for State Representative District 18B (Dkt. 9-1 at 2 ¶ 6).

The restrictions are not hypothetical. Plaintiffs explain that the relevant coordinated campaign activity necessarily begins well before Election Day: fundraising must precede budgeting; budgeting precedes the design and printing of political communications; and those communications must be distributed before absentee voting begins (Dkt. 4 at 6–7). The motion identifies September 1 for finalizing mailing budgets, September 8 for design and printing, September 10 for delivery to the post office, and September 14 for political mail to begin arriving (*id.*). Thus, currently, LPI is approaching a period where significant funds would have to be expended to make coordinated political speech to potential voters. And as the law stands, LPI must adhere to Idaho's challenged contribution limits or limit its own speech to avoid potential enforcement actions. In the First Amendment context, this injury is sufficient. *See Arizona Alliance*, 2026 WL 2277101, at *9–10.

In *Arizona Alliance*, the Ninth Circuit held that voter-advocacy organizations had pre-enforcement standing to challenge a criminal prohibition because their voter-registration and voter-mobilization activities were "arguably" encompassed by the statute's prohibition on providing a "mechanism for voting." 2026 WL 2277101, at *9–10. The court later concluded, on the merits, that the organizations' interpretation was likely incorrect and that the statute probably did not reach their activities. *Id.* at 12–13. That merits determination did not defeat standing because the relevant inquiry at the jurisdictional stage was only whether the organizations' intended conduct was "arguably proscribed." *Id.* at 9–10.

Here, the connection between LPI and subsection (2) is stronger. Defendants concede that subsection (2) applies to LPI, and taken together, LPI's stated intention to coordinate without limitation; its present coordinated campaign activity; its legislative and statewide candidates; and the approaching election are sufficient, under the comparatively permissive First Amendment pre-enforcement standard, to show a presently constrained course of political activity that subsection (2) arguably proscribes.

*Arizona Alliance* also held that the organizations faced a credible threat even though, there, the Arizona Attorney General expressly represented that the organizations were "at no danger of prosecution" for the activities at issue. 2026 WL 2277101, at *10–12. The Ninth Circuit explained that, although failure to disavow enforcement can establish a credible threat in First Amendment cases, an affirmative disavowal does not necessarily eliminate one—particularly where the challenged statute remains in force; the disavowal is only a litigation position; or it does not bind successors or other enforcement authorities. *Id.* Defendants have made no comparable disavowal. Subsection (2) remains operative; the Secretary continues to publish guidance applying contribution limits to coordinated expenditures; and Defendants state only that they are evaluating

*NRSC* and developing guidance. Accordingly, LPI's compliance with subsection (2) rests on an objectively reasonable fear of enforcement.

Traceability and redressability follow directly. Unlike IMC and Clyde, LPI itself is subject to subsection (2). If that provision causes LPI to limit otherwise-planned coordinated expenditures, the injury is directly traceable to the challenged restriction, and an injunction prohibiting Defendants from enforcing subsection (2)'s limits against LPI's coordinated expenditures would remove that restraint.

Accordingly, the Court concludes LPI has sufficiently established an injury in fact from § 67-6610A(2). Because that injury is fairly traceable to Defendants' administration and enforcement of the challenged restriction and would be redressed by the requested injunction, LPI has Article III standing.

**B. LPI Is Entitled to Preliminary Injunctive Relief**

A plaintiff seeking preliminary injunctive relief must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20.

**1. LPI is Likely to Succeed on the Merits**

*NRSC* substantially narrows the inquiry before the Court. There, the Supreme Court held that limits on expenditures made by political parties in coordination with their candidates violate the First Amendment. *NRSC*, 146 S. Ct. at 2415–24, 2427. It explained that such limits burden traditional party communications; prevent parties from amplifying the voices of their adherents; and impose monetary restrictions on a political party's central electoral function. *Id.* at 2415–16. Idaho regulates the same category of political activity through a different statutory mechanism:

Section 67-6610A(2)'s application to coordinated party expenditures as in-kind contributions (Dkt. 9 at 4). Thus, as applied to LPI's coordinated expenditures, subsection (2) imposes a dollar limit on the political-party coordinated spending addressed in *NRSC*.

Defendants offer no developed argument that this application of subsection (2) survives *NRSC*.[2] Their opposition to LPI's likelihood of success rests instead on their contention that LPI lacks standing (Dkt. 9 at 2, 8–10). The Court has rejected that argument. Accordingly, on the present record, LPI is likely to succeed on its claim that Defendants may not apply § 67-6610A(2)'s contribution limits to LPI's expenditures for campaign activity undertaken in coordination with its legislative or statewide candidates.

This conclusion is limited to that application of subsection (2). Plaintiffs do not challenge Idaho's ordinary limits on direct monetary contributions, and nothing in this ruling disturbs otherwise-applicable attribution, disclosure, or reporting requirements.

**2. LPI Has Shown Likely Irreparable Harm**

LPI has also shown likely irreparable harm. Defendants dispute whether LPI is likely to suffer the asserted injury, but that argument largely repeats their standing position, which the Court has rejected. If LPI is prevented from engaging in protected coordinated political speech during the current election, that opportunity cannot be restored after the election has passed. The Ninth Circuit has recognized that First Amendment harm is "particularly irreparable" where a plaintiff seeks to engage in political speech because "'timing is of the essence in politics' and '[a] delay of even a day or two may be intolerable.'" *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1128–29 (9th Cir. 2011), *overruled on other grounds by Bd. of Trs. of Glazing Health & Welfare Tr. v.*

---

[2] Given what has actually been presented, the Court limits its ruling to LPI and the application of subsection (2) presently before it.

*Chambers*, 941 F.3d 1195 (9th Cir. 2019) (citations omitted) (internal quotations omitted). Accordingly, the loss of LPI's opportunity to engage in protected political speech during this election constitutes irreparable harm.

**3. The Balance of Equities and Public Interest Favor Preliminary Relief**

The final two factors merge because Defendants are state officials. Defendants' argument on these factors largely depends on their position that LPI has not established a First Amendment violation. That premise fails, at this stage, for the reasons discussed above.

The State has an important interest in administering its campaign-finance laws, but it has no legitimate interest in enforcing an application of those laws that LPI is likely to establish violates the First Amendment. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). Conversely, the public has a substantial interest in protecting political speech during an ongoing election when the opportunity to exercise those rights cannot be recreated after the election has passed. The balance of equities and public interest therefore favor preliminary relief.

Defendants do not request a bond or identify any costs or damages that would result from the preliminary injunction. Accordingly, the Court concludes that no security is necessary under Rule 65(c). *See Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999).

## IV. ORDER

**IT IS ORDERED** that Plaintiffs' Motion for Preliminary Injunction (Dkt. 4) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Defendants, and their officers, agents, servants, employees, and attorneys, and other persons in active concert or participation with them who receive actual notice of this Order, are PRELIMINARILY ENJOINED, pending final judgment or further order of the Court, from enforcing Idaho Code § 67-6610A(2) against Plaintiff Libertarian Party

of Idaho insofar as Defendants would count expenditures made by LPI on campaign activity in coordination with LPI's candidates for the Idaho Legislature or statewide office as in-kind contributions subject to subsection (2)'s applicable $2,000 and $10,000 per-election contribution limits.

2. This injunction does not prohibit enforcement of § 67-6610A(2) against other contributions that are not LPI's coordinated campaign expenditures. Nothing in this injunction relieves LPI from otherwise-applicable reporting, disclosure, and contribution-attribution requirements.
3. This injunction does not extend preliminary relief to Plaintiffs Idaho Majority Club or Travis Clyde, any other political party or committee, or any nonparty. The Court does not adjudicate any independent right or claim of any candidate or nonparty.
4. Plaintiffs' request for preliminary relief under Idaho Code § 67-6610A(1), first raised in reply and not presented in Plaintiffs' Amended Complaint, is DENIED WITHOUT PREJUDICE.
5. No security is required under Rule 65(c) of the Federal Rules of Civil Procedure.

DATED: August 20, 2026

Amanda K. Brailsford
U.S. District Court Judge